Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| COOPERATIVA DE AHORRO Y CRÉDITO NUESTRA SEÑORA DE LA CANDELARIA (CANDEL COOP)<br><br>APELANTE<br><br>V.<br><br>VICTOR M. MARTÍNEZ ACEVEDO<br><br>APELADO | TA2025AP00541 | *Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Humacao*<br><br>Caso núm.: HU2025CV00805<br><br>SOBRE: Cobro de dinero |

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Mateu Meléndez, la Jueza Boria Vizcarrondo y el Juez Robles Adorno.

Robles Adorno, Juez Ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 16 de diciembre de 2025.

El 13 de noviembre de 2025, la Cooperativa de Ahorro y Crédito Nuestra Señora de la Candelaria (Candel Coop o la parte apelante) presentó ante nos un recurso de *Apelación* en el que solicitó que revoquemos la cuantía de honorarios de abogados, determinada por el *foro a quo*, que surge en la *Sentencia* en rebeldía, emitida el 16 de septiembre de 2025, notificada el 17 de septiembre de 2025, por el Tribunal de Primera Instancia, Sala Municipal de Humacao (TPI o foro primario).[1]

En el aludido dictamen, el TPI declaró Con Lugar la *Demanda*, sobre cobro de dinero, presentada por la parte apelante y condenó al señor Victor M. Martínez Acevedo (el señor Martínez Acevedo o apelado) a cumplir con el pago de $1,107.86 en adición a $200.00 en concepto de honorarios de abogados.

---

[1] Apéndice de la Apelación, Anejo 1.

Ante ello, el 18 de noviembre de 2025, emitimos una *Resolución* en la que le concedimos hasta el 12 de diciembre de 2025 al apelado para que presentara su oposición. Sin embargo, este no compareció ante nos.

Dada las particularidades del caso, debemos mencionar que la Regla 7 (B) (5) del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 15, 215 DPR __ (2025), le confiere a este foro la facultad para prescindir de escritos, en cualquier caso, ante su consideración, con el propósito de lograr su más justo y eficiente despacho. Consecuentemente, procederemos a resolver el caso de autos sin la comparecencia del apelado.

Por los fundamentos que expondremos a continuación, modificamos la *Sentencia* apelada y así modificada, se confirma.

## I.

El caso de epígrafe tuvo su origen el 15 de junio de 2025, cuando la parte apelante instó una *Demanda* en la que alegó que, el 24 de noviembre de 2023, la parte apelante suscribió un contrato con el señor Martínez Acevedo, de venta al por menor a plazos con relación a una tarjeta de crédito master card.[2] Adujo que, la tarjeta de crédito tenía un límite de crédito de $1,000.00, con intereses por financiamiento para mercancía y servicios al tipo al 12.95% anual, entre otros intereses.

Así las cosas, Candel Coop arguyó que, el apelado ha incumplido con el pago al que se obligó y tenía una deuda que ascendía la suma de $1,107.86. Asimismo, la parte apelante enfatizó que llevó a cabo varias gestiones de cobro, pero las mismas han sido infructuosas. Ante la dejadez del apelado en pagar la suma reclamada, Candel Coop solicitó que el TPI le impusiera al señor

---

[2] *Íd.*, Anejo 7.

Martínez Acevedo honorarios por temeridad. Consecuentemente, solicitó que el foro primario declarara Con Lugar la *Demanda* y ordenara el pago de honorarios de abogados por una suma equivalente al treinta (33) por ciento de la deuda.

El 28 de agosto de 2025, la parte apelante radicó un *Escrito al expediente judicial* en el que evidenció que el 30 de julio de 2025, emplazó conforme a derecho al señor Martínez Acevedo.[3]

Transcurrido el término para que el señor Martínez Acevedo presentara una alegación responsiva, el 16 de septiembre de 2025, notificada el 17 de septiembre de 2025, el foro primario emitió una *Sentencia* en la que le anotó rebeldía al apelado.[4] Además, ordenó que el señor Martínez Acevedo cumpliera con el pago de $1,107.86 con respecto la cantidad que le adeudaba a Candel Coop. Asimismo, añadió que el apelado debía cumplir con el pago de $200.00 en concepto de honorarios de abogados.

Insatisfecha, Candel Coop incoó una moción de *Reconsideración* en la que indicó que, el foro primario reconsiderara la suma de honorarios impuestas.[5] Ello, dado que el monto de honorarios de abogados debió ser por el monto de $365.59, correspondiente al treinta y tres (33) por ciento de la deuda, el cual dicho porcentaje constaba pactado en el contrato.

En respuesta, el 21 de octubre de 2025, el TPI emitió una Orden en la que declaró No Ha Lugar a la *reconsideración* debido a que la suma concedida fue razonable en concepto de honorarios de abogados.[6]

Inconforme, el 13 de noviembre de 2025, Candel Coop presentó una *Apelación* en la que coligió el siguiente señalamiento de error:

---

[3] *Íd.*, Anejo 10.
[4] *Íd.*, Anejo 1.
[5] *Íd.*, Anejo 7.
[6] *Íd.*, Anejo 5.

Erró el TPI al imponer una cuantía de honorarios de abogados que ya está previamente pactada entre las partes por el documento de Contrato.

De conformidad con la Regla 7 (B) (5) de nuestro Reglamento, *supra,* procederemos a disponer del recurso de autos dado que dicha regla nos permite prescindir de los escritos, tal como lo es el caso de marras, ante la incomparecencia del apelado.

## II.

## A.

El Art. 1063 del Código Civil, 31 LPRA sec. 8984, establece que una de las fuentes de las obligaciones son los contratos. Con ello, el Art. 1230 del Código Civil, 31 LPRA sec. 9751, define a un contrato "como el negocio jurídico bilateral por el cual dos o más partes expresan su consentimiento en la forma prevista por la ley, para crear, regular, modificar o extinguir obligaciones". Así pues, lo acordado en los contratos tiene fuerza de ley entre las partes, sus sucesores y los terceros en la forma en que dispone la ley. Art. 1233 del Código Civil, *supra* sec. 9754. Para que un contrato quede perfeccionado deben concurrir los siguientes elementos: consentimiento de los contratantes, objeto y causa. *Oriental Bank v. Perapi,* 192 DPR 7, 15 (2014). Los contratos se rigen por la autonomía de la voluntad de las partes en el que estas pueden establecer pactos, cláusulas y condiciones que estimen conveniente, siempre que no sean contrarias a la ley, moral y orden público. *Oriental Bank v. Perapi, supra.* Otro principio que rige las obligaciones es el principio *pacta sunt servanda* la cual establece que las obligaciones nacen de los contratos que tienen fuerza de ley entre las partes y deben cumplirse a tenor con los mismos. *PRFS v. Promoexport,* 187 DPR 42, 52 (2012). Asimismo, los contratos se fundan a base de la autonomía de la voluntad y libertad que tiene las partes contratantes en las que establecen los pactos, cláusulas

y condiciones que tengan por convenientes. *BPPR v. Sunc. Talavera*, 174 DPR 686, 694 (2008).

Ahora bien, el concepto de *rebus sic stantibus* es un fundamento para que un tribunal pueda revisar los términos de un contrato, tales como la buena fe, el abuso del derecho y la equidad contractual. *Casera Foods, Inc. v. ELA*, 108 DPR 850, 855 (1979). Dicho fundamento sirve para atemperar la inflexibilidad de principio *pacta sunt servanda* y permite que un Tribunal pueda intervenir en un contrato y evitar que se afecte la buena fe u ocasione una injusticia al obligar el cumplimiento específico de una cláusula. *Oriental Bank v. Peropi, supra*, pág.17. Para evaluar la procedencia de la cláusula rebus sic stantibus, deben concurrir los siguientes criterios: (1) ocurra una circunstancia imprevisible como una cuestión de hecho dependiente de las condiciones que concurran en cada caso, lo cual es un requisito fundamental; (2) el cumplimiento con las prestaciones del contrato sea extremadamente oneroso, lo cual también es una cuestión de hecho; (3) no se trate de un contrato aleatorio o haya un elemento de riesgo que sea determinante; (4) ninguna de las partes haya incurrido en algún acto doloso; (5) se trate de un contrato de tracto sucesivo o que esté referido a un momento futuro; (6) la alteración de las circunstancias sea posterior a la celebración del contrato y que presente un carácter de cierta permanencia, y (7) que una parte invoque la aplicación de la doctrina. *Oriental Bank v. Peropi, supra*, pág.18, citando a: *Casera Foods Inc. v. E.L.A., supra*, pág. 856. En *Oriental Bank v. Peropi, supra*, pág.18, el Tribunal Supremo, razonó que, aunque no concurran los siete (7) elementos del caso de *Casera Foods Inc. v. E.L.A., supra*, procede la aplicación de la doctrina *rebus sic stantibus* cuando se alteran las bases del negocio y las contraprestaciones entre las partes resulten desproporcional.

**B.**

El contrato de servicios profesionales de un abogado se considera una variante del contrato de arrendamiento de servicios. Sin embargo, al estar revestido por un alto contenido ético, el contrato de servicios profesionales del abogado es de naturaleza sui generis. *Nassar Rizek v. Hernández*, 123 DPR 360, 369–370 (1989); *Berkan v. Mead Johnson Nutrition Puerto Rico, Inc.*, 204 DPR 183, 216 (2020). Dicho contrato representa una "relación contractual en abono de un interés público superior que puede trascender el interés exclusivo de las partes". *Nassar Risek, supra,* pág. 370. Los honorarios deben ser pactados por escrito para brindar mayor claridad en sus términos y libre de ambigüedades. *Pérez v. Col. Cirujanos Dentistas de P.R.,* 131 DPR 545, 554 (1992); *Berkan v. Mead Johnson Nutrition Puerto Rico, Inc, supra,* pág. 216. Ante ausencia de pacto, el abogado tiene derecho a recibir una compensación razonable por los servicios que rinde a sus clientes. *Berkan v. Mead Johnson Nutrition Puerto Rico, Inc, supra,* pág. 216; *In re Franco Rivera,* 169 DPR 237, 267 (2006); *Méndez v. Morales,* 142 DPR 26, 35 (1996). La norma para fijar honorarios de abogados es la siguiente: (1) el abogado que pactó un contrato de honorarios con su cliente el cual se invalidó por alguna irregularidad en su ejecución; (2) el abogado que fue destituido por su cliente sin culminar el trabajo para el que fue contratado; (3) el abogado que pactó honorarios contingentes, se vio obligado a desistir voluntariamente de la reclamación por instrucción de su cliente y no contempló esa eventualidad en el contrato de servicios legales, y (4) el abogado que renunció a la representación legal de su cliente antes de culminar la gestión profesional para la que fue contratado por honorarios contingentes. Blanco Matos v. Colón Mulero, 200 DPR 398, 416 (2018); *Berkan v. Mead Johnson Nutrition Puerto Rico, Inc, supra,* pág. 217.

**III.**

En el caso de autos, Candel Coop argumentó que el TPI erró en no imponerle al apelado el pago del porcentaje, en concepto de honorarios de abogados, suscrito en el contrato. Ante ello, la parte apelante señaló que, el apelado acordó pagar un treinta y tres (33) por ciento, equivalente al monto de la deuda, con relación a los honorarios de abogado.

Conforme las normas jurídicas pormenorizadas, los contratos tienen fuerza de ley entre las partes. Con ello, un contrato es un negocio jurídico bilateral en el que las partes acuerdan voluntariamente los términos a los que se van a obligar. Para que un contrato se perfeccione y sea válido debe concurrir con elementos de consentimiento, objeto y causa. Así pues, una vez las partes se obligan a los términos y condiciones suscritos en el contrato, no deben incumplir con los acuerdos a los que se obligaron, ello atentaría contra el principio de *pacta sunt servanda.* En esa línea, nuestra jurisprudencia ha sido enfática en que los contratos de servicios de abogados deben constar por escrito en aras de evitar controversias relacionadas a los acuerdos de los honorarios de abogado. A esos efectos, los honorarios de abogad por escrito tienen validez entre las partes para su fiel cumplimiento.

Luego de un análisis detallado del expediente resolvemos que, el TPI erró en no ordenar el pago de los honorarios de abogados, conforme al porcentaje acordado que consta en el contrato, el cual el apelado consintió a cumplir. Tal como destacamos en nuestra segunda parte, los contratos tienen fuerza de ley entre las partes. A esos fines, el apelado consintió, contractualmente, a pagar un treinta y tres (33) por ciento, correspondiente a la deuda que contrajera con Candel Coop, en concepto de honorarios de abogados. Consecuentemente, el foro primario erró en conceder una cuantía menor a la acordada entre Candel Coop y el apelado y no hacer valer la cláusula contractual en cuestión. El TPI debió dar fiel

cumplimiento al porcentaje pactado entre las partes y ordenar que el apelado cumpliera con el pago de honorarios de abogados correspondiente al treinta y tres (33) por ciento, ello pues se debe dar finalidad al contrato.

A la luz de los fundamentos esbozados, resolvemos que el foro primario erró en no conceder la cuantía acordada entre Candel Coop y el señor Martínez Acevedo y, por tanto, no debió ordenar el pago de un monto menor en relación con los honorarios de abogados.

## IV.

Por los fundamentos que anteceden, modificamos la *Sentencia* apelada a los fines de que el TPI ordene al señor Martínez Acevedo a cumplir con el pago de acuerdo con el porcentaje pactado de honorarios de abogados y así modificada, confirmamos.

Notifíquese.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones